UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X

PLAZA MOTORS OF BROOKLYN, INC.,
CRYSTAL BAY IMPORTS, LTD.,

                    Plaintiffs,

                             **MEMORANDUM AND ORDER GRANTING**
                                **PRELIMINARY INJUNCTION**
      - against -               21-cv-6545 (KAM)


ANDRON BOGDASAROV,

                    Defendant.

----------------------------------X

       This memorandum and order memorializes the court's oral ruling at the hearing on November 30, 2021 regarding Plaintiffs' motion for a temporary restraining order or preliminary injunction, during which the court granted Plaintiffs' motion for a preliminary injunction from the bench.

## FACTUAL FINDINGS

       Having considered the materials in the record, the court makes the following factual findings.

       Since 1975, Plaza Auto Mall ("Plaza") has been the trade name of a group of automobile dealerships on Nostrand Avenue in Brooklyn, New York.  (ECF No. 6 ("Rosatti Decl.") ¶ 4.)  At various times, these dealerships have included and conducted business as Plaza Honda, Plaza Toyota, Plaza Kia, Plaza Hyundai, and Acura of Brooklyn.  (*Id.*)  Plaintiff Plaza Motors of Brooklyn, Inc. currently does business as Plaza Honda, and Plaintiff Crystal Bay

1

Imports, Ltd. currently does business as Acura of Brooklyn.   (*Id.* ¶ 9.)

Plaza Auto Mall has become well known to consumers of automobiles in Brooklyn, Queens, and Staten Island.   (*Id.* ¶ 5.) For decades, Plaza has marketed the Plaza brand and cultivated relationships with its customers, many of whom purchase or lease a new vehicle every few years.   (*Id.* ¶ 6.)   These customer relationships are critical to Plaza's business.   (*Id.* ¶ 7.)

Plaza maintains databases of customer information in order to cater to customers' preferences and anticipate customers' needs.   (*See id.* ¶¶ 6, 10.)   In particular, Plaza's CDK and Elead databases contain the names and contact information for all of its customers.   (*Id.* ¶¶ 10, 17.)   The databases also contain details about all vehicles sold or leased to each customer, including the type of vehicle, the model year of the vehicle, and the lease amount or sales price of the vehicle.   (*Id.*)   Plaza takes measures to keep this information secret, including by restricting access to its databases to managerial employees who access the information using their own log-on credentials.   (*Id.* ¶ 11.)

Plaintiffs employed Defendant Andron Bogdasarov as a Fleet Manager from February 21, 2012, until his resignation on June 21, 2021.   (*Id.* ¶ 9.)   Throughout his tenure at Plaza, Defendant brokered sales to corporate customers and did not work with individual consumers.   (*Id.* ¶ 19.)   Because he was a manager

2

rather than a salesperson, Defendant had access to Plaza's CDK and Elead databases that contain information about all of Plaza's customers and the vehicles leased or sold to each customer. (*Id.* ¶¶ 10, 17.)

On February 24, 2012, Bogdasarov signed a Confidentiality and Nondisclosure Agreement. (ECF No. 6-1 ("NDA").) Among other things, Bogdasarov agreed that he would hold Plaza's confidential and proprietary information in trust and confidence and would use the information only for Plaza's contemplated business purposes. (*Id.* ¶ 1.) Bogdasarov also agreed that he would not make or retain any copies of Plaza's proprietary information without permission, and would return such information to Plaza at the conclusion of his employment. (*Id.* ¶¶ 2-3.) The NDA provided that it would be governed by New York law. (*Id.* ¶ 5.)

Since his resignation from Plaza in June 2021, Bogdasarov has continued working as an automobile broker. (Rosatti Decl. ¶ 20.) On October 6, 2021, Bogdasarov sent an email from the address "plazahondaandronbogdasarov@gmail.com" to Plaza customer Matthew Lacks regarding a 2019 Honda Odyssey "that you are currently leasing from us." (ECF No. 7 ("Lacks Decl.") ¶ 7; ECF No. 7-1 ("Email Exchange") at 2.) Lacks had leased a Honda Odyssey from Plaza Honda in 2019 and regularly brought his vehicle to Plaza for maintenance. (Lacks Decl. ¶¶ 2, 4.) Before receiving

the October 6, 2021 email, however, Lacks had never met or communicated with Bogdasarov.  (*Id.* ¶¶ 5-6.)

Based on the email address and the reference to the Honda Odyssey that Lacks was "currently leasing from us," Lacks believed that Bogdasarov was employed by Plaza and was soliciting Lacks to lease a new vehicle from Plaza.  (*Id.* ¶ 7.)  In his October 6, 2021 email, Bogdasarov identified the monthly payments and maturity date for Lacks's lease; wrote that "we would like to take you out of your current lease right now"; requested the mileage on Lacks's vehicle "so that we can customize and tailor a new lease for you today"; and offered to "pick [Lacks's vehicle] up from your place of choice and make your remaining payments."  (Email Exchange at 2.)  In subsequent emails from October 2021, Lacks provided his vehicle's mileage and VIN number at Bogdasarov's request and Bogdasarov offered to "keep your payments the same" on a new lease "with no money out of pocket from you."  (*Id.* at 3-4.)

On October 26, 2021, Lacks informed Bogdasarov that he was bringing his vehicle to Plaza Honda for service the following day.  (*Id.* at 4.)  In response, Bogdasarov told Lacks to "see my manager Ornan," who worked as "the used car manager" in "the Toyota building."  (*Id.*)  Bogdasarov wrote to Lacks that "Ornan" would "get your vehicle assessed then we can get your new odyssey ordered and then delivered."  (*Id.*)  When Lacks arrived at Plaza Honda the

following day, he showed the email exchange to a salesperson, who expressed surprise and informed Lacks that Bogdasarov was no longer employed by Plaza.  (Lacks Decl. ¶¶ 10-11.)

Plaintiffs commenced this action on November 23, 2021, bringing federal claims for false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)(1), and misappropriation of trade secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836.  (ECF No. 1 ("Compl.") at 7-10.)  Plaintiffs also assert claims under New York law for breach of contract, misappropriation, unfair competition, breach of fiduciary duty, breach of the duty of loyalty, and violation of the faithless servant doctrine.  (*Id.* at 6-7, 10-14.)  On November 23, 2021, Plaintiffs filed a motion for a temporary restraining order and a preliminary injunction.  (ECF Nos. 4-5.)

The court issued an order to show cause the same day, directing Bogdasarov to respond to Plaintiffs' motion by November 29, 2021 at 2:00 PM and to appear for a hearing on November 30, 2021 at 10:00 AM.  (ECF No. 12 at 1-3.)  On November 24, 2021, Plaintiffs served Defendant via email and FedEx as directed by the order to show cause.  (*Id.* at 2; ECF No. 13.)  Defendant did not respond to Plaintiffs' motion and did not personally appear for the show cause hearing on November 30, 2021 as ordered.

Approximately thirty-five minutes after the show cause hearing was scheduled to begin, Todd Kremin, Esq., entered the

courtroom and stated that he represented Defendant, having been
retained on the evening of November 29, 2021.  Mr. Kremin stated
that he was late to the hearing due to traffic and offered no valid
explanation for Defendant's failure to appear.  The court directed
Mr. Kremin to immediately file a notice of appearance in this case,
but he did not do so until 11:44 PM on November 30, 2021.

At the hearing, Mr. Kremin argued that his client has
never communicated with Mr. Lacks and does not use or have access
to "plazahondaandronbogdasarov@gmail.com."  However, Mr. Kremin
has not filed any papers on Defendant's behalf and offered no
evidence at the show cause hearing to support his arguments.  Thus,
Defendant has failed to show cause why an injunction should not
issue.

### CONCLUSIONS OF LAW

"A plaintiff seeking a preliminary injunction must
establish that he is likely to succeed on the merits, that he is
likely to suffer irreparable harm in the absence of preliminary
relief, that the balance of equities tips in his favor, and that
an injunction is in the public interest." *Winter v. Natural Res.
Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Because the court
concludes that all four factors weigh in favor of the plaintiffs,
the motion for a preliminary injunction is GRANTED.

## A. Irreparable Harm

First, plaintiffs are likely to suffer irreparable harm in the absence of a preliminary injunction. "The loss of reputation and goodwill constitutes irreparable harm." *Really Good Stuff, LLC v. BAP Investors, L.C.*, 813 F. App'x 39, 44 (2d Cir. 2020) (citing *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004)). "Furthermore, loss of business opportunities and relationships with clients who could produce an indeterminate amount of business over years to come are . . . hard to measure in dollars and are properly considered irreparable harm." *Ericmany Ltd. v. Agu*, 2016 WL 8711361, at *3 (E.D.N.Y. June 3, 2016) (quotations and citation omitted); *see also, e.g.*, *Regeneron Pharms., Inc. v. U.S. Dep't of Health & Human Servs.*, 510 F. Supp. 3d 29, 40 (S.D.N.Y. 2020) ("Courts have determined that a loss of existing business and a decline in the opportunity for new business may qualify as irreparable harm.").

Here, Bogdasarov's impersonation of a Plaza employee and his use of Plaza's name and customer databases to solicit Plaza's customers threaten irreparable harm to Plaza's reputation, goodwill, and business as a whole. Plaza's databases include not only the names and contact information for all of its customers, but also contain detailed information about every car that those customers have ever purchased or leased from Plaza. (Rosatti Decl. ¶¶ 10, 17.) Using the information cultivated over decades to build

and maintain Plaza's relationships with customers is critical to Plaza's business, particularly in an industry where individuals and families frequently shop at the same location over a period of years. (*Id.* ¶¶ 6-8.) By impersonating a Plaza employee and using Plaza's name and databases to solicit Plaza customers like Mr. Lacks, Bogdasarov has threatened client relationships "that would produce an indeterminate amount of business in years to come." *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999). Furthermore, Bogdasarov's interactions with Plaza customers under the guise of being a Plaza employee threaten the reputation and goodwill that Plaza has established with customers over the course of more than four decades. *See Register.com, Inc.*, 356 F.3d at 404.

### B. Likelihood of Success on the Merits

The court also concludes that plaintiffs are likely to succeed on the merits of their claims.

### 1. False Designation of Origin

To prevail on a claim for false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), a "plaintiff must demonstrate that it has a valid mark entitled to protection and that the defendant's use of it is likely to cause confusion." *Kid Car NY, LLC v. Kidmoto Techs. LLC*, 518 F. Supp. 3d 740, 749 (S.D.N.Y. 2021) (quoting *Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 117 (2d Cir. 1999)).

*First*, the plaintiffs have shown that their "Plaza Auto Group" and "Plaza Honda" marks are likely entitled to protection. "To be valid and protectible, a mark must be capable of distinguishing the products it marks from those of others." *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999). In assessing distinctiveness, courts classify marks in ascending order of strength as (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384-85 (2d Cir. 2005) (citation omitted).

The court concludes that Plaza's marks are descriptive because they describe a feature or quality of Plaintiffs' products, namely, the location where they can be purchased. *See, e.g.*, *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997) ("A descriptive mark describes a product's features, qualities or ingredients in ordinary language, or describes the use to which a product is put." (quotation and citations omitted)). In other words, the term "Plaza" "denote[s] a particular source or origin of a product." *Gold Shield Distribs., LLC v. Elio E. Salvo, Inc.*, 824 F. Supp. 2d 389, 405 (E.D.N.Y. 2011); *see, e.g.*, *Freeway Ford, Inc. v. Freeway Motors, Inc.*, 512 F. Supp. 2d 1353, 1361 (M.D. Ga. 2007) (holding that "Freeway Ford" was a descriptive mark); *Nat'l Auto. Club v. Nat'l Auto Club, Inc.*, 365 F. Supp. 879, 886 (S.D.N.Y. 1973) (holding that "National Automobile Club"

was a descriptive mark). Because the marks are descriptive, Plaintiffs must show that they have acquired "secondary meaning" in the marketplace in order to receive trademark protection. *See Star Indus., Inc.*, 412 F.3d at 385.

Courts determine secondary meaning based on "advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the mark's use." *Car-Freshner Corp. v. Am. Covers, LLC*, 980 F.3d 314, 329 (2d Cir. 2020). Here, Plaza's General Manager has submitted a declaration attesting to the "decades" that Plaza has spent "marketing the Plaza brand and cultivating relationships with its customers." (Rosatti Decl. ¶ 6.) These marketing efforts have resulted in the "Plaza Auto Mall" trade name becoming well known to consumers in Brooklyn, Queens, and Staten Island. (*Id.* ¶ 5.) Further, Plaintiffs have used the "Plaza Auto Mall" trade name since 1975, and Bogdasarov's emails with Lacks reflect an effort to plagiarize and misuse the mark. (*Id.* ¶ 4; Lacks Decl. ¶¶ 7-9.) Based on these facts, the court concludes that Plaintiffs are likely to succeed in showing that "Plaza Auto Mall" and "Plaza Honda" are descriptive marks that have acquired secondary meaning and are thus entitled to trademark protection.

*Second*, the court concludes that Defendant's use of Plaintiffs' marks is likely to cause confusion. To assess the

10

likelihood of confusion, courts analyze the following non-exclusive factors, which are known as the *Polaroid* factors: (1) the strength of the mark; (2) the degree of similarity between the two marks; (3) the proximity of the products; (4) the likelihood that the prior owner will "bridge the gap"; (5) actual confusion; (6) whether the defendant acted in bad faith; (7) the quality of the defendant's product; and (8) the sophistication of the buyers. *Hamilton Int'l Ltd. v. Vortic LLC*, 13 F.4th 264, 272 (2d Cir. 2021). "No single factor is dispositive, and cases may certainly arise where a factor is irrelevant to the facts at hand." *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 400 (2d Cir. 1995).

The court concludes that the first factor weighs moderately in Plaintiffs' favor because "Plaza Motor Group" and "Plaza Honda" are relatively weak, descriptive marks. *See, e.g.*, *N.Y. State & Elec. Gas Corp. v. U.S. Gas & Elec. Co., Inc.*, 697 F. Supp. 2d 415, 435 (W.D.N.Y. 2010) (finding that a descriptive mark used for decades to describe "what plaintiff sells" and "where plaintiff sells it" possessed "no more than moderate strength" absent more substantial evidence of secondary meaning).

The second and third factors – the similarity of the marks and the proximity of the products – weigh strongly in Plaintiffs' favor. In assessing similarity, "courts must analyze the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of

11

factors that could cause confusion among prospective purchasers."
*Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d
532, 537 (2d Cir. 2005).   Based on the totality of the
circumstances, the court concludes that Bogdasarov's use of an
email address containing "plazahonda" and his references to "us"
and "we" are highly likely to cause confusion, as evidenced by
Defendant's communications with Lack.   Similarly, the proximity of
the products weighs strongly in favor of Plaintiffs.   This factor
"can apply both to the subject matter of the commerce in which the
two parties engage and the geographic areas in which they operate."
*Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 39 (2d
Cir. 2016).   Here, the subject matter and the geographic areas are
identical, with Bogdasarov offering to sell the same cars (in
Lacks's case, a Honda Odyssey) to the same customers.[1]

        The fifth and sixth factors – actual confusion and bad
faith – also weigh strongly in Plaintiffs' favor.   Bogdasarov's
use of the Plaza mark in his email and his impersonation of a
current Plaza employee confused Lacks and have the potential to
confuse other Plaza customers who receive emails containing
information about the cars they bought or leased from Plaza.   *See*
*Guthrie Healthcare Sys.*, 826 F.3d at 44 (noting that actual

---

[1] The fourth factor, regarding whether the senior user of a mark will "bridge
the gap" by entering the junior user's market, is "irrelevant to the *Polaroid*
analysis" because the parties are already "in competitive proximity."   *Star*
*Indus., Inc.*, 412 F.3d at 387.

confusion "can be powerful evidence supporting a likelihood of confusion"). Further, the creation of "plazahondaandronbogdasarov@gmail.com" and the fact that Bogdasarov could have only obtained Lacks's information from Plaza's customer databases provide evidence of bad faith. *See Star Indus., Inc.*, 412 F.3d at 388 ("Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products.").

Finally, the court concludes that the seventh and eighth factors are neutral because neither party has presented evidence regarding the quality of Defendant's cars or the sophistication of automobile consumers. Because the first, second, third, fifth, and sixth *Polaroid* factors all weigh in Plaintiffs' favor, the court concludes that Plaintiffs are likely to succeed in showing a likelihood of confusion.

### 2. Defend Trade Secrets Act

The court also concludes that Plaintiffs are likely to succeed on the merits of their claim under the Defend Trade Secrets Act ("DTSA"). The DTSA provides a federal cause of action to the owner of a trade secret that is misappropriated and is related to a product or service used in, or intended for use in, interstate or foreign commerce. 18 U.S.C. § 1836(b). A trade secret is defined to include "all forms and types of . . . business . . .

information, including . . . compilations," provided that: (A) the owner has taken "reasonable measures to keep such information secret"; and (B) the information "derives independent economic value . . . from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* § 1839(3).

      *First*, "[a] customer list developed by a business through substantial effort and kept in confidence may be treated as a trade secret and protected . . . against disclosure to a competitor, provided the information it contains is not otherwise readily ascertainable." *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 44 (2d Cir. 1999); *see also, e.g.*, *Art & Cook, Inc. v. Haber*, 416 F. Supp. 3d 191, 195 & n.3 (E.D.N.Y. 2017) (applying *Haber* to claims under the DTSA). Here, Plaza has devoted substantial effort over the course of decades to build and maintain databases containing information about all of its customers. This information, including the type, model year, and price for every car that each customer has bought or leased, is not readily ascertainable through public sources and its secrecy provides independent economic value to Plaza. *See, e.g.*, *Chefs Diet Acquisition Corp. v. Lean Chefs, LLC*, 2016 WL 5416498, at *5 (S.D.N.Y. Sept. 28, 2016) (finding that a reasonable jury could conclude that customer lists qualified as a trade secret); *Freedom*

*Calls Found. v. Bukstel*, 2006 WL 845509, at *15-16 (E.D.N.Y. Mar. 3, 2006) (finding likelihood of success on merits of trade secret claim based on misappropriation of client list). Further, Plaza has taken reasonable measures to keep this information secret through restrictions on access and the use of nondisclosure agreements. *See, e.g.*, *Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc.*, 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (finding that confidentiality agreements and access restrictions supported a claim under the DTSA).

*Second*, Plaintiffs are likely to succeed in showing that Bogdasarov misappropriated Plaza's trade secrets. The DTSA defines misappropriation to include "disclosure or use of a trade secret of another without express or implied consent by a person who . . . acquired [the trade secret] under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B)(ii)(II). Bogdasarov obtained access to Plaza's customer databases through his employment and signed a non-disclosure agreement affirming his obligations to keep the information in confidence, refrain from disclosing the information to third parties, and return the information to Plaza at the conclusion of his employment. Because Bogdasarov had never interacted with Lacks during his employment with Plaza, and could have only obtained Lacks's customer information using Plaza's databases, Plaintiffs are likely to

succeed in showing that Bogdasarov breached his duties of confidentiality by his unauthorized use of Plaza's customer databases. *See, e.g.*, *Chefs Diet Acquisition Corp.*, 2016 WL 5416498, at *6 (finding "little or no dispute" that a reasonable jury could find the defendant misappropriated customer list because he received the list while working as a vendor for plaintiff and "was aware that he was not entitled to use the customer list to compete with [plaintiff] at a later date").

### 3. State Law Claims

Because the court has concluded that Plaintiffs are likely to succeed on the merits of their federal claims, and because the state law claims would not affect the scope of the injunction, the court finds that it is unnecessary to address Plaintiffs' likelihood of success on its state law claims at this time. *See, e.g.*, *Int'l Bus. Mach. Corp. v. De Freitas Lima*, 2020 WL 5261336, at *14 (S.D.N.Y. Sept. 3, 2020) (declining to address claim when doing so would not affect scope of preliminary injunction); *Devos, Ltd. v. Record*, 2015 WL 9593616, at *18 (E.D.N.Y. Dec. 24, 2015) (same).

### C. Balance of Equities

Third, the balance of equities favors the plaintiffs. "[I]t is no hardship for [the defendant] to refrain from" from misrepresenting that he is a Plaza employee and from using Plaza's trade name and databases in an effort to lure away Plaza's

customers.  *Benihana, Inc. v. Benihana of Tokyo*, 784 F.3d 887, 897 (2d Cir. 2015).  By contrast, for the reasons discussed above, Plaza is likely to suffer irreparable harm to its reputation, goodwill, customer relationships, and business as a whole.

### D. Public Interest

Finally, the public interest "is served by the enforcement of the parties' lawful agreement."  *Id.; see also, e.g.*, *Intertek Testing Servs., N.A., Inc. v. Pennisi*, 443 F. Supp. 3d 303, 347 (E.D.N.Y. 2020) ("[I]njunctive relief would serve the public interest by ensuring that reasonable restrictive covenants into which the parties voluntarily entered are enforced." (citation omitted)).  The protection of Plaza's trademark rights and trade secrets also serves the public interest.  *See, e.g.*, *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, 2021 WL 1553926, at *13 (S.D.N.Y. Apr. 20, 2021).

### E. Security

Federal Rule of Civil Procedure 65(c) provides that a court may issue a preliminary injunction "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined . . . ."  "Rule 65(c) gives the district court wide discretion to set the amount of a bond, and even to dispense with the bond requirement where there has been no proof of likelihood of harm . . . ."  *N.Y. State Telecomms. Assoc., Inc. v.*

*James*, --- F. Supp. 3d ----, 2021 WL 2401338, at *14 (S.D.N.Y. June 11, 2021) (quoting *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 136 (2d Cir. 1997)).  Because Defendant has failed to offer any proof of the likelihood of harm, the court declines to require a bond.

### PRELIMINARY INJUNCTION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is GRANTED.

Defendant, and any persons or entities acting in concert with defendant, are hereby:

(a)   enjoined and restrained from using in any manner whatsoever Plaza's trade secret and confidential and proprietary information (including, without limitation, information contained in, or derived from, Plaza's customer database, including but not limited to the identity and contact information of Plaza's customers, and for each customer of Plaza, the type of vehicle leased or purchased, the year the vehicle was leased or purchased, when the lease of the vehicle expires, and the lease amount or sales price of the vehicle) regarding Plaza's customers or other matters involving Plaza;

(b)   directed to return to Plaza within 48 hours of notice of this Order all originals and copies of documents, records, and information, whether in hard copy and/or computerized

and/or other electronic media form, that contain Plaza's trade secret and confidential and proprietary information (including, without limitation, Plaza's customer database, including the identity and contact information of Plaza's customers, and for each customer of Plaza, the type of vehicle leased or purchased, the year the vehicle was leased or purchased, when the lease of the vehicle expires, and the lease amount or sales price of the vehicle) regarding Plaza's customers or other matters involving Plaza and which Defendant obtained or accessed while employed or engaged by Plaza;

(c) directed to allow Plaza to access all information regarding the leasing or sale of automobiles in electronic accounts that are in Defendant's custody or control and on which he stored Plaza's trade secrets and confidential or proprietary information.  The parties are ordered to meet and confer regarding this directive, including with respect to the use of search terms, and submit any disputes to Magistrate Judge Reyes;

(d) enjoined and restrained from using in any manner whatsoever the moniker "plazahonda," "plaza," or any similar moniker in his e-mail address or any other communications regarding the leasing or sale of automobiles;

19

(e)  enjoined and restrained from making the appearance that he
     is employed or affiliated with Plaza.

        Plaintiffs  are  directed  to  serve  a  copy  of  this
Memorandum and Order on Defendant via email.  Counsel for Defendant
is also directed to serve a copy of this Memorandum and Order on
Defendant.  Counsel for both parties must file proofs of service
on the docket by 6:00 PM on December 1, 2021.

        SO ORDERED.


                                    /s/ Kiyo A. Matsumoto
                                    Hon. Kiyo A. Matsumoto
                                    United States District Judge
                                    Eastern District of New York

Dated:      Brooklyn, New York
            December 1, 2021